

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Arlander Keys | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 00 C 2085 | **DATE** | 7/26/2002 |
| **CASE TITLE** | Lena Benson vs. Larry Massanari | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
   ☐ FRCP4(m) ☐ General Rule 21 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] Memorandum Opinion and Order entered. Plaintiff's Motion for Summary Judgment [#18] is granted in part. The Commissioner's Cross-motion for Summary Judgment [#21] is denied. This case is remanded to the Commissioner for further proceedings consistent with this Opinion.

(11) ■ [For further detail see order attached to the original minute order.]

| | |
|---|---|
| | No notices required, advised in open court. |
| | No notices required. |
| ✓ | Notices mailed by judge's staff. |
| | Notified counsel by telephone. |
| | Docketing to mail notices. |
| | Mail AO 450 form. |
| | Copy to judge/magistrate judge. |

number of notices

**JUL 29 2002**
date docketed

docketing deputy initials

7/26/2002
date mailed notice

U.S. DISTRICT COURT
CLERK,
02 JUL 26 AM 11:48

courtroom deputy's initials: FT/*recy*

Date/time received in central Clerk's Office

FT
mailing deputy initials

**Document Number**

13

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| LENA BENSON | ) | Case No. 00 C 2085 |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Magistrate Judge |
| | ) | Arlander Keys |
| | ) | |
| LARRY MASSANARI, | ) | |
| Commissioner of Social | ) | |
| Security, | ) | |
| | ) | |
| Defendant. | ) | |

DOCKETED

JUL 2 9 2002

### MEMORANDUM OPINION AND ORDER

Plaintiff, Lena Benson, pursuant to 42 U.S.C. §§ 405(g), 1383(c)(3) (2002), moves the Court for summary judgment pursuant to Rule 56(a) of the Federal Rules of Civil Procedure. Alternatively, Plaintiff asks the Court to remand the case to the Commissioner of Social Security (the "Commissioner") for further proceedings. The Commissioner has filed a cross-motion for summary judgment. For the reasons set forth below, the Commissioner's motion is denied, and Plaintiff's motion is granted in part. Specifically, the Court remands the case for further proceedings consistent with this opinion.

### PROCEDURAL HISTORY

In October 1993, Plaintiff filed an application for disability insurance benefits and supplemental security income under Section

423(a) of the Social Security Act (the "Act"), 42 U.S.C. § 423(a) (2002). Plaintiff claimed that arthritis, diabetes, scoliosis and high blood pressure prevented her from working. (R. at 91-98.) Her application was denied initially and on reconsideration. (R. at 100-02, 104.) Plaintiff appealed the decision and the case was assigned to Administrative Law Judge Larry Miller (the "ALJ"). (R. at 105.) The ALJ issued an opinion on April 15, 1996, holding that Plaintiff was not entitled to benefits. (R. at 25, 105.) The ALJ found that Plaintiff had impairments, including severe diabetes mellitus, asthma and hypertension, but concluded that these impairments did not meet or equal any listed impairment and did not prevent her from performing work at a medium exertional effort. (R. at 34.) Further, the ALJ found that Plaintiff was able to perform relevant past work as an office worker and as a cashier. *Id.*

On July 31, 1996, Plaintiff filed another application for disability insurance benefits and supplemental security income. (R. at 202.) Plaintiff alleged that she had been unable to work since February 24, 1996,[1] because of her asthma, high blood pressure, diabetes and arthritis. *Id.* On September 18, 1996, the Commissioner denied her application. (R. at 178-180.) Plaintiff

---

[1] Plaintiff later amended her application for benefits by changing the onset date of her disability to April 16, 1996 to avoid the *res judicata* effect of her first application's denial on April 15, 1996. (R. at 62.)

timely filed for reconsideration on October 3, 1996, which application the Commissioner subsequently denied. (R. at 181.) Thereafter, Plaintiff requested, and was granted, a hearing before the ALJ, and on February 20, 1998, Plaintiff testified at the hearing. (R. at 58.) On July 6, 1998, the ALJ held that Plaintiff was not disabled, and therefore, was not entitled to disability insurance benefits or supplemental security income. (R. at 13.)

The Appeals Council denied Plaintiff's request for review of the ALJ's decision. (R. at 9-10.) Therefore, the ALJ's decision is the final determination of the Commissioner and the subject of the motions before the Court.

**STATEMENT OF FACTS**

**A. <u>Plaintiff's Past Work</u>**

Plaintiff worked as a cashier for a wholesaler from 1980 to 1985; as a bus driver from 1986 to 1987; and as a cashier at various establishments from 1987 to 1996, most recently as a cashier at a Target store from April of 1993 to February of 1996. (R. at 64-65, 88, 176, 215.) Plaintiff's position as a bus driver required her to walk for one hour per day, stand for one hour per day, sit for four hours per day, and bend occasionally — no lifting was required of her. (R. at 222.) Plaintiff's position as a cashier at Target required her to ring out and bag customers' merchandise; use a computerized cash register; receive payment for

goods; and, sometimes, manually calculate receipt totals on paper using a calculator. (R. at 220-21.) The Target position required Plaintiff to stand all day, bend constantly, and occasionally lift between ten and twenty-five pounds. (R. at 65, 220.)[2]

### B. **Plaintiff's Testimony**

At the February 20, 1998 hearing before the ALJ, Plaintiff testified that, in 1993, she began working full-time at Target as a cashier, but early in 1995, her hours were reduced to twenty-eight hours per week. (R. at 65.) Plaintiff stated that she stopped working at Target in February of 1996, primarily because her feet hurt to the extent that she could not stand for more than five minutes. *Id.* She also testified that she left Target, because she was unable to properly take her insulin on the job. (R. at 66.)

In 1995, Plaintiff began experiencing numbness and pain in her feet, which, by 1996, prevented her from standing without support for more than five or ten minutes, or standing with support for

---

[2]    Plaintiff offered conflicting evidence concerning the amount of lifting required of her as a cashier at Target. In the Disability Report she filed with the Social Security Administration (the "Administration"), Plaintiff stated that the position required her to lift ten pounds frequently, and up to twenty pounds occasionally. (R. at 211-216.) However, in the Vocational Report that Plaintiff filed with the Administration, Plaintiff stated that the position required her to lift twenty-five pounds frequently. (R. at 220.) Then, at the hearing, Plaintiff testified that the position required her to lift up to thirty pounds. (R. at 65.)

more than thirty minutes. (R. at 70.) Plaintiff testified that she has trouble wearing shoes for the entire day, including "special [diabetic support] shoes." (R. at 85.) Plaintiff testified that after two or three hours of wearing shoes she must take her shoes off, because her feet begin to hurt and sometimes swell. *Id.* Plaintiff also stated that she experiences problems walking, and can only walk for two blocks before needing to rest. (R. at 71.) Plaintiff also testified that her only problem with sitting is that her feet swell up if she does not elevate them. *Id.*

Plaintiff testified that she has other impairments that prevent her from working. (R. at 76, 80, 86.) She complained of numb, stiff fingers that encumber her ability to lift objects in excess of ten pounds. (R. at 76.) Additionally, Plaintiff testified that she has impaired vision and, in spite of wearing corrective eye-glasses, has trouble seeing things from a distance. (R. at 86.) However, Plaintiff testified that she does not have any problem seeing objects that are only a short distance away. *Id.* Further, Plaintiff also complained of abdominal pain that began in December of 1997, for which she sought treatment from her primary care physician, Dr. Lana O'Neil, and from Cook County Hospital. (R. at 80.) Despite seeking medical attention, Plaintiff's symptoms persist to the extent that she claims she can do little besides lie on the couch. (R. at 82.)

In addition, Plaintiff's various impairments have reduced her ability to perform basic household tasks. (R. at 75, 82-83.) Plaintiff asserts that she washes clothes and dishes, sweeps the floor, makes her bed and cleans the house. *Id.* However, it takes her an hour to sweep the floor, because she must rest so often. *Id.* Further, Plaintiff testified that she is unable to shop, because the amount of standing she claims shopping requires causes pain in her feet. *Id.*

## C. <u>Vocational Expert's Testimony</u>

Irving J. Roth, a vocational expert ("VE"), rendered his opinion of the physical demands of Plaintiff's past work in response to an interrogatory posed by the ALJ. (R. at 231.) Mr. Roth classified Plaintiff's relevant past work as "Cashier II"[3] and "Bus Driver,"[4] as defined in the Dictionary of Occupational

---

[3] A "Cashier II" position requires a "Light Strength Level," which is defined as the ability to exert twenty pounds of force occasionally, and ten pounds of force frequently. U.S. DEPT. OF LABOR, SELECTED CHARACTERISTICS OF OCCUPATIONS 333 (1993). The physical demands of a "Cashier II" position include frequent reaching, handling, fingering, talking, hearing and near visual acuity. *Id.* at 333.

[4] A "Bus Driver" position requires a "Medium Strength Level," which is defined as the ability to exert between twenty and fifty pounds of force occasionally, or between ten and twenty-five pounds of force frequently. U.S. DEPT. OF LABOR, SELECTED CHARACTERISTICS OF OCCUPATIONS 363. The physical demands of a "Bus Driver" position include constant reaching, constant handling, occasional fingering, frequent talking, frequent hearing, frequent near visual acuity,
(continued...)

Titles. *Id.* Mr. Roth stated that Plaintiff would be unable to perform any of her past jobs, assuming that Plaintiff's physical limitations prevented her from walking or standing for long periods of time or from lifting more than ten pounds. (R. at 231.) Mr. Roth further stated that, assuming Plaintiff's physical limitations, Plaintiff would be unable to perform her past jobs even if she had the option to sit or stand on the job. *Id.* Moreover, Mr. Roth could not identify any of Plaintiff's work skills that were tranferrable to semi-skilled or skilled positions within Plaintiff's residual functional capacity. (R. at 232.)

### D. **Medical Evidence**

Plaintiff has been hypertensive for twenty years and has been diabetic since 1989. (R. at 268.) She takes several medications to control her hypertension, diabetes and asthma. *Id.* Since 1993, Plaintiff has been treated for asthma, cataracts, headaches, blurred vision, and pneumonia, as well as for hypertension and diabetes-related symptoms. (R. at 145, 147-48, 244, 257, 268.)

### 1. **Plaintiff's ability to walk, stand, and sit**

On February 15, 1995, Plaintiff was treated at a hospital for diabetes and was prescribed insulin. (R. at 243.) During that

---

[4](...continued)
constant far visual acuity, constant depth perception, frequent accommodation, frequent color vision and constant field of vision. *Id.* at 363.

visit, she complained of pain in her feet, and the treating physician noted a hard area on the bottom of her right foot. *Id.*

In April 1995, Plaintiff sought medical treatment for her bilateral foot pain and numbness in her forefoot and toes. (R. at 267.) The treating physician noted "pedal pulses of DP +1/4 [and] PT not palpable." *Id.* The physician's treatment notes indicate that Plaintiff complained of symptoms that occurred after she would walk for three to four blocks, which the physician found were consistent with intermittent claudication.

On September 5, 1996, Dr. George B. Holmes Jr., a specialist in foot and ankle surgery, examined Plaintiff's feet. (R. at 293-94.) Plaintiff was referred to Dr. Holmes after she complained of bilateral foot pain, numbness, and discomfort with weight bearing. *Id.* Dr. Holmes found that Plaintiff had normal range of motion of the ankle, subtalar and midfoot joints. *Id.* Plaintiff also demonstrated a negative Tinel's sign over the posterior tibial tendon, and her sensory examination was grossly intact and appropriate for her underlying diabetes. *Id.* Dr. Holmes recommended that Plaintiff wear diabetic shoes and prescribed her capsaicin cream for her neuropathic symptoms. *Id.*

On December 27, 1996, the Illinois Department of Public Aid ("IDPA") referred Plaintiff to Dr. Dominick Gaziano for a consultative visit. (R. at 269.) Dr. Gaziano's examination

revealed that Plaintiff's gait was slow, she was not able to "toe
or heel walk," she took small steps, and she could only squat one-
quarter of the way to the floor. *Id.* Plaintiff's range of motion
in all extremities was normal, and Dr. Gaziano did not observe
erythema, edema, warmth or tenderness in any joints. *Id.* The left
dorsum of Plaintiff's foot was tender, which Dr. Gaziano stated was
possibly cellulitis. *Id.* Plaintiff also exhibited mild erythema
and 1+ pedal edema. *Id.* Dr. Gaziano's findings in the IDPA medical
report indicated that Plaintiff's ability to sit for eight hours
per day, five days per week was at full capacity, but her capacity
to walk, bend, and stand for that same amount of time was reduced
by twenty to fifty percent. (R. at 273.) Further, Dr. Gaziano
concluded that, during an eight hour day, five days per week,
Plaintiff could repeatedly lift up to twenty pounds. *Id.*

On May 6, 1997, Dr. Irving Zitman presented his medical
opinion in response to an interrogatory posed by the ALJ[5]. (R. at
275-76.) After reviewing Plaintiff's medical records, Dr. Zitman
stated that Plaintiff had impairments that significantly limited
her ability to perform physical work, namely: diabetes mellitus
with retinopathy not well-controlled for years; severe hypertension
without end organ disease; and peripheral vascular disease

_____

[5] Dr. Zitman failed to respond to the question
regarding Plaintiff's residual functional capacity. (R. at
276.)

9

manifested by intermittent claudication and absent posterior tibial
pulses in both feet. *Id.*

In December of 1997, Dr. O'Neil, after having treated
Plaintiff since October of 1997, completed a medical assessment of
Plaintiff's ability to do work-related activities. (R. at 309.)
Dr. O'Neil identified Plaintiff's medical conditions as athsma,
insulin dependent diabetes, and hypertension. *Id.* She noted that
Plaintiff's asthma was improving, her hypertension was fluctuating,
and that each condition was chronic. *Id.* Dr. O'Neil cited
intermittent episodes of wheezing and periodically elevated blood
sugar as the objective medical evidence relative to each of
Plaintiff's conditions. *Id.*

In responding to the questions in the medical assessment form,
Dr. O'Neil indicated the following: 1) Plaintiff could not stand
for more than thirty minutes uninterrupted; 2) Plaintiff could not
stand or walk for six hours out of an eight hour day; and 3)
Plaintiff could not stand or walk for longer than thirty minutes
out of an eight hour day. (R. at 310.) Dr. O'Neil further
indicated that Plaintiff could possibly sit for six hours out of an
eight hour work day, but also stated that Plaintiff could sit for
a maximum of two hours out of an eight hour work day. *Id.*
Additionally, Dr. O'Neil indicated that Plaintiff was limited to
one hour of uninterrupted sitting. *Id.* In another answer, Dr.

O'Neil indicated Plaintiff could sit for two hours uninterrupted. *Id.* Moreover, Dr. O'Neil stated that Plaintiff should elevate her feet while sitting to prevent pedal edema. *Id.* In Dr. O'Neil's opinion, Plaintiff is limited to lifting ten pounds occasionally, carrying five pounds occasionally, pushing or pulling no more than twenty pounds, bending four to five times per thirty minutes, and reaching twenty times in a sixty minute period. *Id.* Further, Dr. O'Neil's treatment notes for Plaintiff through 1998 indicate that her diabetes was stable, her hypertension was uncontrolled, and that she manifested trace edema. (R. at 316-19.)

## 2. **Plaintiff's Visual Acuity**

Plaintiff's medical records indicate that she was diagnosed with diabetic retinopathy and cataracts, and she underwent laser surgery on her right eye in January of 1996. (R. at 239, 262.) In December of 1996, Dr. Gaziano classified Plaintiff's corrected vision as "20/40" in her right eye and "20/25" in her left eye. (R. at 271.) In December of 1997, Dr. O'Neil noted that Plaintiff's corrected vision was unimpaired and that she wore glasses. (R. at 311.)

## E. **The Administrative Law Judge's Decision**

On July 6, 1998, the ALJ held that Plaintiff was not entitled to disability insurance benefits or supplemental security income. (R. at 23.) However, the ALJ found that Plaintiff met the

11

"disability insured status" requirements of the Act as of February 24, 1996, and would continue to meet the requirements through March 31, 2001. *Id.* The ALJ also found that Plaintiff had not engaged in substantial gainful activity since February 24, 1996. *Id.* Moreover, the ALJ found that Plaintiff's medical records established that Plaintiff had severe diabetes mellitus, hypertension without evidence of end-organ damage, and asthma, but the ALJ concluded that her impairments did not meet or equal one of the impairments listed in the Social Security Regulations (the "Regulations"). (R. at 23).

After discussing Plaintiff's medical history, the ALJ found that Plaintiff's primary complaint, and the cause of her alleged inability to work, was the terrible pain in her feet. (R. at 22.) However, the ALJ found that Plaintiff's subjective allegations of debilitating pain were incredible and unsupported by the clinical signs and findings. (R. at 21.) Further, the ALJ concluded that the medical evidence in the record failed to establish the presence of underlying impairments that could produce the kind of pain and functional limitations alleged by Plaintiff. *Id.*

The ALJ noted that Plaintiff's testimony at the hearing was conflicted and vague. *Id.* Particularly, the ALJ pointed out the inconsistencies in Plaintiff's testimony regarding her reason for leaving her job at Target. (R. at 22.) For instance, the ALJ noted

12

that she initially testified that she left Target, because she could not stand for more than five minutes. *Id.* The ALJ pointed out that later, however, she testified that she left Target because she was unable to take her insulin on the job. *Id.* The ALJ also noted that the alleged onset date of Plaintiff's disability was April of 1996, according to her application, but in fact, she had been alleging disability as early as April of 1992. (R. at 21.) Further, the ALJ pointed out that, at Plaintiff's prior disability claim hearing in February of 1996, Plaintiff stated that she intended to return to work. (R. at 21.) In addition, the ALJ noted a lack of medical evidence to support Plaintiff's allegations of problems with using her hands. *Id.*

The ALJ noted that, in September of 1996, "the worst [Plaintiff's] doctor could say was that [Plaintiff] presented with some symptoms of neuropathy." (R. at 22.) Moreover, the ALJ pointed out that Plaintiff's treating physician found only a trace of edema and no real complaints of either foot or hand pain. *Id.* The ALJ rejected Dr. Zitman's conclusion that Plaintiff has intermittent claudication because of her "normal examination and the lack of findings or complaints reflected in her doctor's treatment records." *Id.* Likewise, the ALJ rejected Dr. O'Neil's conclusion that Plaintiff is limited to sedentary work, based on Plaintiff's improved asthma; the lack of evidence of arthritis in

Plaintiff's hands; or of any serious side effects from the diabetes. *Id.* Instead, the ALJ found that Plaintiff has the residual functional capacity to perform work-related activities at the medium exertional level. *Id.* The ALJ held that Plaintiff is not "disabled" as defined in the Act, because she can still do relevant past work. (R. at 23.)

## STANDARD OF REVIEW

In reviewing the ALJ's decision, the Court may not decide the facts, reweigh the evidence, or substitute its own judgment for that of the ALJ. *Herron v. Shalala,* 19 F.3d 329, 333 (7th Cir. 1994). Where conflicting evidence allows reasonable minds to differ, the responsibility for determining whether a claimant is disabled falls upon the Commissioner, not the courts. *Herr v. Sullivan*, 912 F.2d 178, 181 (7th Cir. 1990); *see also Stuckey v. Sullivan*, 881 F.2d 506, 509 (7th Cir. 1989) (holding that the ALJ has the authority to assess medical evidence and give greater weight to that which he finds more credible). Rather, the Court must accept findings of fact that are supported by "substantial evidence," 42 U.S.C. § 405(g), where substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Herron*, 19 F.3d at 333 (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)).

The Court is limited to determining whether the Commissioner's

final decision is supported by substantial evidence and based upon proper legal criteria. *Ehrhart v. Sec'y of Health and Human Servs.*, 969 F.2d 534, 538 (7th Cir. 1992). However, this does not mean that the ALJ is entitled to unlimited judicial deference. The ALJ must consider all relevant evidence and may not select and discuss only the evidence that favors his ultimate conclusion. *Herron*, 19 F.3d at 333. In addition to relying on substantial evidence, the ALJ must articulate his analysis at some minimal level. *See Young v. Sec'y of Health and Human Servs.*, 957 F.2d 386, 393 (7th Cir. 1992) (holding that an ALJ must articulate his reason for rejecting evidence "within reasonable limits" in order for meaningful appellate review). The ALJ must build "an accurate and logical bridge" from the evidence to his conclusion. *Clifford v. Apfel*, 227 F.3d 863, 872 (7th Cir. 2000).

Finally, although Plaintiff bears the burden of demonstrating his disability, "[i]t is a basic obligation of the ALJ to develop a full and fair record." *Thompson v. Sullivan*, 933 F.2d 581, 585 (7th Cir. 1991) (*quoting Smith v. Sec'y of Health, Educ. and Welfare*, 587 F.2d 857, 860 (7th Cir. 1978)). If an ALJ fails to fulfill this obligation, such failure "is 'good cause' to remand for gathering additional evidence." *Smith v. Apfel*, 231 F.3d 433, 437 (7th Cir. 2000) (holding that the ALJ should have obtained more evidence if he found the evidence before him insufficient).

## SOCIAL SECURITY REGULATIONS

The Regulations prescribe a sequential five-part test for determining whether a claimant is disabled. *See* 20 C.F.R. §§ 404.1520 and 416.920 (2001). The ALJ must consider: (1) whether the claimant is presently unemployed; (2) whether the claimant has a severe impairment or combination of impairments; (3) whether the claimant's impairment meets or equals any impairment listed in the Regulations as being so severe as to preclude gainful activity; (4) whether the claimant is unable to perform his past relevant work; and (5) whether the claimant is unable to perform any other work existing in significant numbers in the national economy. *See* 20 C.F.R. §§ 404.1520 and 416.920; *see also Young*, 957 F.2d at 389. A finding of disability requires an affirmative answer at either step 3 or step 5. *Id.* A negative answer at any step (other than step 3) precludes a finding of disability. *Id.* The claimant bears the burden of proof at steps 1-4, but the burden shifts to the Commissioner at step 5. *Id.*

## DISCUSSION

Plaintiff attacks the ALJ's ruling on four separate grounds and contends that each warrants reversal or remand. Specifically, Plaintiff argues that: 1) the ALJ erred by failing to engage in a task-by-task comparison of Plaintiff's past work with Plaintiff's residual functional capacity ("RFC") as required at the fourth step

16

in the sequential disability analysis; 2) the ALJ did not build a logical bridge from the evidence to his ultimate conclusion, because the ALJ ignored or improperly disregarded evidence that did not support the ALJ's conclusion; 3) the ALJ's assessment of Plaintiff's RFC was not supported by substantial evidence, because the ALJ made an independent medical assessment that contradicted all of the expert medical opinions in the record; and 4) the ALJ erred in failing to discuss Plaintiff's visual acuity as an impairment that could prevent her from performing past work. (Pl.'s Mem. Supp. Summ. J. at 7, 11, 13.) The Court addresses each of Plaintiff's arguments in turn.

### 1. **The ALJ did not Engage in the Proper Analysis of Plaintiff's Ability to Perform Her Past Work**.

The fourth step in the five-step sequential disability analysis requires the ALJ to decide whether the claimant can perform relevant past work. The ALJ makes this determination by first carefully considering and listing the exact physical requirements of Plaintiff's past work. *See* Titles II and XVI: Assessing Residual Functional Capacity in Initial Claims, 61 Fed. Reg. 34474 (July 2, 1996); *Nolen v. Sullivan*, 939 F.2d 516, 518 (7th Cir. 1991)(holding that the ALJ should have listed and described the tasks that the claimant's prior work entailed, rather than defining the work in general terms, such as 'unskilled at

light exertional level').

Next, the ALJ must specifically assess, in light of the evidence in the record, whether Plaintiff can still perform her past work. *Id.* At this stage in the sequential analysis, Plaintiff's "RFC must not be expressed initially in terms of the exertional categories of 'sedentary,' 'light,' 'medium,' 'heavy' and 'very heavy' work, because the first consideration at this step is whether the individual can do past relevant work as he or she actually performed it." 61 Fed. Reg. 34474. Failure to engage in this type of analysis requires the case to be remanded for further consideration. *Nolen*, 939 F.2d at 518.

Here, the ALJ did not articulate a task-by-task breakdown of Plaintiff's past work and compare each task to the Plaintiff's specific functional limitations. Instead, the ALJ broadly concluded that Plaintiff retains the capacity for "medium work" and that Plaintiff's past work did not require exertion in excess of Plaintiff's limits. The ALJ pointed out that the Target job involved standing all day, the office job required Plaintiff to stand and sit, and that both jobs required Plaintiff to lift less than twenty five pounds. However, the ALJ did not list the tasks

required for Plaintiff's past work as it was actually performed[6] and compare it to the specific functional abilities and limitations of Plaintiff. Without such an articulation, the Court is not sure that the ALJ performed the required analysis. Therefore, this case must be remanded for further consideration.

### 2. **The ALJ Improperly Discounted or Ignored Expert Testimony**.

Plaintiff argues that the ALJ erred in concluding that no evidence supported Plaintiff's alleged problems with standing and walking. (Pl.'s Mem. Supp. Summ. J. at 11.) According to Plaintiff's argument, the ALJ ignored evidence that favored Plaintiff's claim, while emphasizing only that evidence which supported the ALJ's ultimate conclusion. *Id.*

An ALJ may not "select and discuss only that evidence that favors his ultimate conclusion." *Diaz v. Chater*, 55 F.3d 300, 307 (7th Cir. 1995). Although an ALJ need not specifically discuss each piece of evidence in the record, he must at least include a reasonably articulated analysis of a line of unfavorable evidence

---

[6] The ALJ apparently relied upon the VE's finding in determining the exertional requirements of Plaintiff's past jobs. The VE's findings were based upon the Dictionary of Occupational Titles, which generally categorizes each job according to the degree of exertion each job requires. However, at the fourth step in the evaluation, the analysis should focus on the work as *actually performed* (based on Plaintiff's testimony and any other evidence of the actual job requirements), and not on what is generally required of an entire class of jobs.

-- including the reason for discounting it. *See id.; Henderson ex rel. Henderson v. Apfel*, 179 F.3d 507, 514 (7th Cir. 1999). Moreover, the Regulations require that "[i]n deciding whether you are disabled [the ALJ] will *always* consider the medical opinions in your case record," 20 C.F.R. § 404.1527(b)(emphasis added), and greater weight should be given to opinions that are supported by objective clinical signs. 20 C.F.R. § 404.1527(d)(3). When an ALJ ignores an entire line of evidence, he commits error that is grounds for remanding the case for further consideration. *Zurawski v. Halter,* 245 F.3d 881, 888-89 (7th Cir. 2001).

Here, the ALJ failed to consider the clinical signs and objective medical evidence in the record that supported Dr. Zitman's consultative diagnosis of intermittent claudication. The ALJ merely stated that he rejected the diagnosis because of "the normal examination and lack of any findings or complaints reflected in her doctor's treatment records." (R. at 22.)[7] However, as stated previously, Plaintiff has been diagnosed by her physicians as suffering from diabetes mellitus, a noted symptom of which is "generalized degenerative changes in large and small blood

---

[7] Another problem with the ALJ's rejection of Dr. Zitman's diagnosis is that the ALJ failed to articulate the specific "normal examination" to which he referred, which leaves the Court to speculate as to the exact evidence the ALJ considered. Thus, the ALJ failed to build "an accurate and logical bridge" from the evidence to his conclusion.

vessels." STEDMAN'S MEDICAL DICTIONARY 490 (27th ed. 2000).
Intermittent claudication is defined as "a condition marked by
cramp-like pains in the legs, especially in the calf muscles,
brought on by walking and relieved by rest. It is caused by a
deficiency in the blood supply to the extremities." 2 J.E. SCHMIDT,
M.D., ATTORNEY'S DICTIONARY OF MEDICINE, I-82 (1991). Thus, the ALJ did
not discuss objective medical evidence in the record supporting Dr.
Zitman's diagnosis.

In April 1995, Plaintiff sought medical treatment after
experiencing bilateral foot pain. The treating physician made a
diagnosis of intermittent claudication bilaterally at three to six
blocks, and noted pedal pulses of DP +1/4 and posterior tibial
pulse not palpable. Again, on August 7, 1996, Plaintiff's doctor
noted decreased pedal pulses. The ALJ did not mention these
clinical signs anywhere in his opinion, even though they support
Dr. Zitman's diagnosis of intermittent claudication. Hence, it is
not clear whether the ALJ considered the evidence of decreased
pedal pulses before making his claim that no evidence supported
intermittent claudication. The ALJ's omission is grounds for
remanding this case for further consideration.

Further, Plaintiff argues that the ALJ did not give proper
consideration to Dr. Gaziano's medical findings. (Pl.'s Mem. Supp.
Summ. J. at 12.) Dr. Gaziano's findings with respect to

21

Plaintiff's RFC were not consistent with the demands of work at a medium exertional level. Although the ALJ noted Dr. Gaziano's medical findings in his review of the evidence, he neither mentioned nor discussed Dr. Gaziano's findings in his analysis of Plaintiff's RFC. The ALJ erred by not considering the medical opinions in the record. Although the ALJ may have considered Dr. Gaziano's findings, the ALJ did not articulate any such analysis. Therefore, the ALJ's omission is grounds for remanding this case.

In addition, Plaintiff argues that the ALJ erroneously concluded that the record did not contain evidence that supported a diagnosis of diabetic neuropathy as the cause of Plaintiff's problems walking and standing. (Pl.'s Mem. Supp. Summ. J. at 11.) However, the Court finds that the ALJ engaged in a sufficient discussion of the objective medical evidence to support his conclusion that the Plaintiff's diabetic neuropathy would not limit her ability to stand or walk. The ALJ cited Dr. Holmes's finding of "negative Tinel's sign" and "grossly intact sensory examination," as well as Dr. Holmes's notation of only subjective symptoms of neuropathy as opposed to objective clinical signs. It is clear from the ALJ's discussion that he weighed the objective

signs[8] against the symptoms reported by Plaintiff and did not err in holding that the lack of objective evidence trumped Plaintiff's subjective complaints.

Therefore, as stated above, the Court holds that the ALJ erred in ignoring Dr. Gaziano's medical findings, as well as failing to consider the objective medical evidence that supported Dr. Zitman's findings. Thus, the Court must remand this case for further consideration of Dr. Gaziano's and Dr. Zitman's opinions.

### 3. **The ALJ's Residual Functional Capacity Determination was not Supported by Substantial Evidence**.

An individual's RFC is "what [a claimant] can still do despite [his or her] impairments." 20 C.F.R. § 404.1545(a). RFC must be determined based upon all the relevant evidence, including medical evidence such as testimony by treating physicians, consulting physicians and vocational experts, and non-medical evidence such as lay testimony regarding a claimant's daily activities. *Id.* An RFC assessment should take into account a claimant's physical, mental, and other abilities affected by her impairments, as well as the

---

[8] Plaintiff points out that she was prescribed special shoes to deal with her edema, that a hard area was found on her left foot, and that edema was found exceeding trace amounts. (Pl.'s Mem. Supp. Summ. J. at 13.) The ALJ discussed Plaintiff's edema, but did not discuss the hard area. However, neither Plaintiff nor any of the physicians in the record linked the hard area on Plaintiff's foot to any specific impairment. Instead, Plaintiff offers only speculation that it could be painful; therefore, the ALJ need not have specifically dealt with such evidence.

total limiting effects of the claimant's impairments, even if such effects are not severe. *See 20* C.F.R. § 404.1545(b)-(e). Further, the functional impact of the claimant's subjective complaints of pain will be considered insofar as the pain may reasonably be accepted as consistent with the claimant's medically determinable severe impairment. *See* 20 C.F.R. § 404.1529(c)(4), (d)(4); 20 C.F.R. § 404.1545(a). The ALJ bears the responsibility of deciding a claimant's RFC. *See* 20 C.F.R. § 404.1546. The ALJ is not bound by a physician's conclusion that a person is "disabled," but the ALJ's RFC finding must be supported by substantial evidence. *See Clifford*, 227 F.3d at 870. However, an ALJ's own independent medical findings do not constitute substantial evidence. *See Rohan v. Chater*, 98 F.3d 966, 970 (7th Cir. 1996).

Furthermore, the ALJ must show a rational basis for giving one opinion more weight than another. *Id.*; *Clifford*, 227 F.3d at 870. This requirement is based on the premise that "neither the Appeals Council nor this court is qualified to make [a] medical judgment about residual functional capacity based solely on bare medical findings." *Bauzo v. Bowen*, 803 F.2d 917, 926 (7th Cir. 1986) (internal citation omitted). Thus, the ALJ must not substitute his or her own conclusions about the functional limitations caused by Plaintiff's medical conditions for those of a medical expert, without expressly relying upon some medical evidence or authority.

*Clifford*, 227 F.3d at 870.

Plaintiff argues that the ALJ erred by making his own RFC determination after having dismissed or ignored all of the medical RFC opinions in the record. (Pl.'s Mem. Supp. Summ. J. at 7.) Plaintiff contends that the ALJ's RFC conclusion is not supported by substantial evidence and that it amounts to the ALJ substituting his own assessment of Plaintiff's limitations for those of various medical experts. *Id.*

The Court agrees that the ALJ's RFC finding is not supported by substantial evidence. The ALJ failed to articulate any reasoning or provide support for his conclusion that Plaintiff is capable of medium work. Moreover, the ALJ perfunctorily stated his findings of RFC, without providing a logical connection between substantial evidence and his conclusion. Thus, the ALJ failed to build a logical bridge from the evidence to his conclusion.

The Court also finds that the ALJ improperly substituted his own opinion for that of medical experts. Each of the physicians who examined Plaintiff reached a conclusion that contradicts the ALJ's RFC determination. For instance, Dr. O'Neil stated that Plaintiff could not stand for more than thirty minutes uninterrupted, and Dr. Gaziano stated that Plaintiff's ability to stand for eight hours per day, five days per week, was reduced by twenty to fifty percent. In contrast, the ALJ concluded that

25

Plaintiff could perform her past work as a cashier, even though it required standing all day. Moreover, Dr. Gaziano stated that Plaintiff could only lift up to twenty pounds occasionally, and Dr. O'Neil stated that Plaintiff could only lift ten pounds occasionally. However, the ALJ's conclusion that Plaintiff can perform "medium work" amounts to an independent conclusion that Plaintiff can lift up to fifty pounds occasionally and twenty-five pounds frequently. Since the ALJ's findings contradict all of the medical opinions in the record, the Court holds that the ALJ's RFC finding represents only a lay interpretation of the bare medical facts and is grounds for remanding the case for further consideration.

The Commissioner argues that the ALJ's holding is supported by Social Security Administration ("Administration") physicians' denial of Plaintiff's claim at the initial and reconsideration stage. (Def.'s Mem. Supp. Summ. J. at 6.) However, the Regulations prohibit an ALJ from giving controlling weight to Administration physicians' ultimate conclusions regarding a claimant's disability at the initial and reconsideration stages of a claimant's application. *See* 20 C.F.R. § 404.1512(b)(6). Here, the Administration physicians at the initial and reconsideration stages only expressed their ultimate conclusions that Plaintiff was "not disabled," which they indicated by marking an "X" in the

26

appropriate box. (R. at 177, 179.) Therefore, the Administration physicians did not express any opinions that an ALJ may consider in support of his ruling.

The Commissioner also argues that the ALJ did not err by making his own unsupported finding of RFC, because the bare medical evidence in this case was the sort that could be interpreted by a lay person. (Def.'s Mem. Supp. Summ. J. at 7.) The Commissioner attempts to distinguish the Seventh Circuit's decision in *Bauzo v. Bowen* by claiming that *Bauzo* involved medical facts that were not interpretable by a lay person. *Id.* The Court is not persuaded by the Commissioner's argument. The plaintiff in *Bauzo* suffered from severe lumbar disease, angina, and intermittent claudication, with her primary impairment arising from her subjective complaints of pain when standing. 803 F.2d at 924-26. The Commissioner does not specify, nor is it apparent to the Court, how the medical evidence in *Bauzo* is more complicated or less accessible to lay analysis than the medical evidence in this case, which involves intermittent claudication, peripheral neuropathy, retinopathy and diabetes mellitus.

The Court holds that the ALJ's RFC assessment was not supported by substantial evidence. Therefore, this case must be remanded for further consideration and, if necessary, for further expert medical assessment of Plaintiff's RFC.

### 4. **The ALJ did not Err in Failing to Discuss Plaintiff's Visual Acuity**.

Finally, Plaintiff contends that the ALJ should have discussed her allegedly poor eyesight as a functional limitation contributing to her inability to work. (Pl.'s Mem. Supp. Summ. J. at 13.) Plaintiff argues that the ALJ's failure to discuss Plaintiff's eyesight requires that the case be remanded for further consideration. *Id.*

Admittedly, the ALJ did not discuss the Plaintiff's alleged visual limitations. However, in the most recent assessment of Plaintiff's vision, her treating physician concluded that Plaintiff's corrected vision was unimpaired.[9]  Likewise, Dr. Gaziano concluded in 1996 that Plaintiff's corrected vision was 20/40 in her right eye and 20/25 in her left eye. Moreover, during the hearing, Plaintiff testified that she had no problems with near visual acuity. Further, Mr. Roth indicated that Plaintiff's past work as a cashier required only near visual acuity.

Certainly, the ALJ should have mentioned and disposed of this issue in his opinion. However, the Seventh Circuit has previously

---

[9]  Plaintiff argues that Dr. O'Neil's diagnosis is not authoritative, because she never tested Plaintiff for diabetic retinopathy. However, Plaintiff does not cite any objective medical evidence to prove that her near visual acuity is impaired. The limitation caused by Plaintiff's condition, not the condition itself, is the issue before the Court. The Court finds that Plaintiff retains near visual acuity.

articulated that "[n]o principle of administrative law or common sense requires us to remand a case in quest of a perfect opinion unless there is reason to believe that the remand might lead to a different result." *Fisher v. Bowen,* 869 F.2d 1055, 1057 (7th Cir. 1989). The evidence shows that Plaintiff's corrected vision would not prevent her from performing her past work as a cashier. Thus, the Court holds that the ALJ's failure to discuss Plaintiff's visual acuity was harmless, and did not alter the ultimate result in the case.

### CONCLUSION

As stated above, the Court holds that the ALJ's determination that Plaintiff can do relevant past work is not supported by substantial evidence in the record. Moreover, the ALJ ignored medical opinions in the record without providing a reasonably articulated analysis, as required in the Seventh Circuit. Further, the ALJ improperly discounted Dr. Zitman's diagnosis of intermittent claudication and failed to discuss the findings of Dr. Gaziano. In addition, the ALJ erred by substituting his own judgment for that of medical experts when he found that Plaintiff could perform "medium" work. Finally, the ALJ's failure to discuss Plaintiff's visual acuity was harmless error.

**IT IS HEREBY ORDERED** that Plaintiff's Motion for Summary Judgment be, and the same hereby is, **GRANTED** in part, consistent

29

with this opinion.

**IT IS FURTHER ORDERED** that the Commissioner's Motion for Summary Judgment be, and the same hereby is, **DENIED**.

DATED: July 25, 2002          E  N  T  E  R:

ARLANDER KEYS
United States Magistrate Judge